# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RODOLFO SANABRIA SANCHEZ, )<br>)<br>Defendant. ) | Case No. CR-09-037-RAW |

## REPORT AND RECOMMENDATION

The Defendant Rodolfo Sanabria Sanchez was indicted herein for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He seeks suppression of evidence seized from his residence pursuant to an anticipatory search warrant. The Defendant's Motion to Suppress with Memorandum in Support [Docket No. 22] was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Defendant later amended his motion to include copies of the search warrant in question and the supporting affidavit, which were inadvertently omitted from the original motion. The undersigned Magistrate Judge conducted a suppression hearing and now recommends that the Defendant's motion to suppress be denied.

### A. Factual Background

The underlying facts are not in dispute. On March 12, 2009, an Arizona highway patrolman observed Jason Bollen committing several traffic violations and pulled him over. During this traffic stop, Bollen consented to a search of his vehicle, which revealed two and a half pounds of methamphetamine hidden in the gas tank. Bollen admitted he had received the drugs in California and was transporting them to the Defendant's home in Tahlequah,

Oklahoma. He also admitted delivering drugs to the Defendant's home three times within the past six months and agreed to assist the authorities in proceeding against the Defendant. The drugs were reinserted in the Defendant's gas tank and he was transported to Oklahoma, where the local DEA task force planned a controlled delivery of the drugs by Bollen and obtained a warrant from the District Court of Cherokee County to search the Defendant's home when the delivery had occurred.

Bollen and a task force agent went to Defendant's home on March 13, 2009. Bollen left the agent in the woods nearby and attempted to deliver the drugs, but the Defendant was not home. Bollen and the agent returned later that day and found the Defendant at home with his girlfriend. On this occasion Bollen retrieved the drugs from his gas tank and delivered them to the Defendant, who advised that he could give Bollen $500.00 right away and the rest of the money the next morning. Bollen left shortly thereafter. The entire encounter took approximately twenty-five minutes and was audiotaped.

Bollen advised the DEA task force that he had delivered the drugs and the search warrant was then executed. During the search, the DEA task force found the drugs and a shotgun inside the front door of the Defendant's home. The Defendant and his girlfriend were both arrested.

## B. Analysis

The warrant issued by the District Court of Cherokee County to search the home of the Defendant in this case was an anticipatory search warrant. "An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not

presently) certain evidence of crime will be located at a specified place.'" *United States v. Grubbs*, 547 U.S. 90, 94 (2006), *quoting* 2 W. LaFave, *Search and Seizure* § 3.7(c), p. 398 (4th ed. 2004). Execution of an anticipatory search warrant is typically conditioned upon the occurrence of a specified "triggering" event that gives rise to probable cause. *See id.* ("Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time-a so-called 'triggering condition.' . . . If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location[.]"). Thus, such a warrant has *two* probable cause requirements:

> [F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that *if* the triggering condition occurs there is a fair probability that contraband or evidence of a crime will be found in a particular place, but also that there is probable cause to believe the triggering condition *will occur*. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.

*Id.* at 96-97 [internal quotation marks and citations omitted; emphasis in original].

### 1. The supporting affidavit established probable cause.

The triggering condition in this case was the delivery of the drugs to the Defendant's home by Bollen, and there is no dispute that this established probable cause to believe that evidence of a crime would be discovered there. *See id.* at 97 ("[T]he occurrence of the triggering condition–successful delivery of the videotape to Grubbs' residence–would plainly establish probable cause for the search."). The issue here is whether there was probable

cause to believe that the triggering condition *would* occur, *i. e.*, that Bollen actually would deliver the drugs to the Defendant's home. In this regard, the Defendant argues there was no reason to believe any of the information provided by Bollen because: (i) he was engaged in criminal activity; (ii) there was no evidence as to his past reliability; and (iii) the DEA task force agents did nothing to corroborate his story. The undersigned Magistrate Judge finds that none of these factors vitiates probable cause to believe that Bollen would deliver the drugs to the Defendant's home as promised.[1]

First, the absence of any evidence as to Bollen's past reliability *in and of itself* casts no doubt upon his claims that the drugs were to be delivered to the Defendant. *See*, *e. g.*, *United States v. Canfield*, 212 F.3d 713, 719 (2d Cir. 2000) ("'[I]t is improper to discount an informant's information simply because he has no proven record of truthfulness or accuracy.'"), *quoting United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993). Second, while it is true that little (if anything) was done to corroborate Bollen's story, there nevertheless were a number of indications that it was reliable, *e. g.*, he provided a first-hand, detailed description of his activities in transporting methamphetamine from California to the Defendant's residence on more than one occasion, *see Illinois v. Gates*, 462 U.S. 213, 234

---

[1] "In determining the value of an informant's report in establishing probable cause, the magistrate should assess the informant's veracity or reliability and basis of knowledge in light of the totality of the circumstances." *United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992), *citing Illinois v. Gates*, 462 U.S. 213, 233 (1983). "[W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir.), *cert. denied*, 546 U.S. 1010 (2005) [citation omitted]. There must be only a "'substantial basis' for determining that probable cause existed." *United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir.), *cert. denied*, 534 U.S. 886 (2001), *quoting United States v. Le*, 173 F.3d 1258, 1265 (10th Cir. 1999).

(1983) ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."), he was a known informant who could be held accountable by law enforcement if the information he provided turned out to be misleading or false, *see, e. g.*, *United States v. Jenkins*, 313 F.3d 549, 554 (10th Cir. 2002), *cert. denied*, 538 U.S. 1006 (2003) (noting that when police know an informant's identity "[a] reasonable person in such circumstances would realize that in all likelihood the police could, if they so chose . . . hold him responsible if his allegations turned out to be fabricated."); *see also United States v. Couch*, 367 F.3d 557, 560-61 (6th Cir. 2004) (known informant is inherently more credible because informant could potentially be held accountable for providing false information), and because he participated personally in the delivery of the drugs to the Defendant, which made it highly unlikely that the drugs were intended for anyone else. *See, e. g., Grubbs,* 547 U.S. at 97 ("[T]he affidavit established probable cause to believe the triggering condition would be satisfied. Although it is possible that Grubbs could have refused delivery of the videotape he had ordered, that was unlikely.").

Third, the fact that Bollen was engaged in criminal activity *enhances* (rather than diminishes) his credibility. He admitted not only his involvement in the current drug transaction but also three previous transactions of which the authorities were apparently unaware. Such admissions clearly bolster his credibility. *See, e. g., United States v. Harris,* 403 U.S. 573, 583-84 (1971) ("Admissions of crime, like admissions against proprietary

interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search. . . . [T]he informant's admission that over a long period and currently he had been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search."). *See also United States v. Leidner*, 99 F.3d 1423, 1430 (7th Cir. 1996), *cert. denied*, 520 U.S. 1169 (1997) ("Sapp's credibility increased when he admitted to making prior deliveries for Leidner."), *citing United States v. Buckley,* 4 F.3d 552, 556 (7th Cir. 1993), *cert. denied sub nom. Herman v. United States,* 510 U.S. 1124 (1994) ("For the search warrant to be supported by probable cause, [the informant] must have spoken against [his] penal interest at the time [he] admitted to [the arresting officer] that [he] purchased cocaine from the defendants."); *United States v. Patayan Soriano,* 361 F.3d 494, 505 (9th Cir.), *cert. denied,* 543 U.S. 852 (2004) (stating that the informant's statements "amounted to admissions of criminal activity and could be deemed reliable on that basis").

The undersigned Magistrate Judge finds that there was no reason to doubt Bollen's claim that the drugs he was carrying were to be delivered to the Defendant's home. Based on the information provided by Bollen, the following was included in the affidavit in support of the search warrant: (i) the details of Bollen's traffic stop in Arizona and the seizure of two and a half pounds of methamphetamine from the vehicle he was driving; (ii) Bollen's admission to both Arizona and Oklahoma law enforcement that he was delivering the methamphetamine to the Defendant's residence in Tahlequah, Oklahoma; (iii) Bollen's admission that he had made three similar deliveries to the same location in the past six

months and had transported cash back to California; (iv) Bollen's contention that the vehicle he was driving was not his, but the Defendant had advised him to put the title and insurance in his name and he would be compensated; (v) Bollen's description of the Defendant's home, including the fact that he kept a shotgun leaning against the dining room wall; (vi) that the affiant had been to the Defendant's residence, *e. g.*, after describing the property to be searched, the affidavit indicates "[y]our affiant ha[s] been to this location and can return"; and, (vii) Bollen's implicit agreement to complete the delivery of the methamphetamine to the Defendant's residence. Such information clearly provided probable cause to believe that the triggering condition would occur, *i. e.*, that Bollen would deliver the drugs to the Defendant's home, and the undersigned Magistrate Judge therefore finds that the anticipatory search warrant was supported by probable cause. *See*, *e. g.*, *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir.), *cert. denied*, 513 U.S. 878 (1994) (noting that the "totality of the circumstances" supported a finding of probable cause when the affidavit indicated "the officers had apprehended Ruiz with approximately forty-five pounds of marijuana, and he told them he was delivering it to the Bieris' farm").

### 2. The supporting affidavit was not defective in form.

The Defendant nevertheless challenges both the supporting affidavit and the anticipatory search on formal grounds. He contends that the *affidavit* did not support the issuance of an anticipatory search warrant because it lacked a recital that the delivery of drugs to his home would be government-controlled. The authorities cited by the Defendant, however, do not support the notion that a formal recital is required; fairly read, those

authorities stand simply for the proposition that a government-controlled delivery of evidence will support issuance of an anticipatory search warrant. *See, e. g., United States v. Lora-Solano*, 330 F.3d 1288, 1292 (10th Cir. 2003), *cert. denied sub nom. Cortez-Cruz v. United States*, 541 U.S. 940 (2004) ("An anticipatory search warrant, such as the warrant in this case, is valid when the warrant application *indicates* there will be a government-controlled delivery of contraband to the place to be searched, probable cause for the search is established and . . . provided the warrant's execution is conditioned on the contraband's delivery to, or receipt at, the designated place." ) [emphasis added; quotation omitted]. *See also United States v. Roland*, 145 F.3d 1194, 1202-03 (10th Cir. 1998) ("[W]hen the warrant affidavit *refers* to a controlled delivery of contraband to the place designated for search, the nexus requirement of probable cause is satisfied and the affidavit need not provide additional independent evidence linking the place to be searched to criminal activity.") [emphasis added], *citing United States v. Hugoboom*, 112 F.3d 1081, 1086-87 (10th Cir. 1997) (finding probable cause satisfied when there is a "reference" to a controlled delivery in the supporting affidavit). Thus, to justify issuance of an anticipatory search warrant, a supporting affidavit need not contain a *recital* that delivery will be government-controlled; it need only *indicate* that delivery will be government-controlled, or *refer* to a delivery that will be government-controlled. The supporting affidavit in this case clearly *does* indicate (and the issuing court could reasonably have inferred) that the delivery of drugs to the Defendant's home would be government-controlled, if for no other reason than because Bollen was in custody following his arrest and would be accompanied and surveilled during the delivery. *See*, *e. g.*, *Leidner*,

99 F.3d at 1429 (finding that delivery was "essentially a government-controlled delivery" when cooperating witness was making the delivery and being "supervised by the government").[2]

### 3. The anticipatory search warrant was not facially defective.

The Defendant also contends that the *search warrant* was facially invalid because it failed to specify the triggering condition upon which execution was premised. The *Grubbs* court expressly rejected this contention, *see* 547 U.S. at 98 ("The Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential 'precondition to the valid exercise of executive power.' Much less does it require description of a triggering condition."), but the Defendant argues additionally that if the triggering condition is not included in the warrant, the affidavit setting forth the condition must be attached when the warrant is executed. The Defendant thus analogizes the triggering condition to the description of the items to be seized (or the place to be searched), which must be set forth with particularity in a search warrant or in an attached and expressly incorporated supporting affidavit. *See, e. g., United States v. Leary,*

---

[2] Even if the authorities cited by the Defendant could be read to require a recital in the supporting affidavit that delivery would be government-controlled, the missing recital here would not be fatal to a finding of probable cause. The Defendant argues that absent a recital of government-controlled delivery, an affidavit supporting an anticipatory search warrant must contain, *inter alia*, evidence demonstrating the reliability of the information leading the affiant to believe the triggering event will occur. *See, e. g., Rowland,* 145 F.3d at 1203 ("[W]hen the delivery of contraband is not within the control of the government, the supporting affidavit should show not only that the agent applying for the warrant believes a delivery of contraband is going to occur, but also how the agent learned of the expected delivery, how reliable the information is, and what the role of law enforcement officers will be in the expected delivery."). As discussed above, the undersigned Magistrate Judge is satisfied that the information provided by Bollen (and included in the supporting affidavit) was sufficiently reliable to establish probable cause.

846 F.2d 592, 603 (10th Cir. 1988) ("[T]he particularity of an affidavit may cure an overbroad warrant, but only 'where the affidavit and the search warrant . . . can be reasonably said to constitute one document. Two requirements must be satisfied to reach this result: first, the affidavit and search warrant must be physically connected so that they constitute one document; and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference.'"), *quoting* 2 W. LaFave, *Search and Seizure* § 4.6(a). *See also United States v. Dahlman,* 13 F.3d 1391, 1395 (10th Cir. 1993), *cert. denied,* 511 U.S. 1045 (1994) (quoting *Leary* in the context of a defective description of the place to be searched).

The Tenth Circuit has not addressed the precise issue raised here. But in a decision predating *Grubbs* by almost ten years, the *Hugoboom* court likewise rejected the claim that an anticipatory search warrant lacking a description of the triggering condition would be invalid under the Fourth Amendment:

> Certainly, the most efficient way to ensure that an anticipatory warrant is properly executed is to include the conditions for its execution in the warrant. We will not posit a Fourth Amendment violation requiring suppression, however, when constitutionally satisfactory conditions for execution of the warrant are stated in the affidavit that solicits the warrant, accepted by the issuing magistrate, and actually satisfied in the execution of the warrant.

*Hugoboom*, 112 F.3d at 1087, *quoting United States v. Moetamedi*, 46 F.3d 225, 229 (2d Cir. 1995). In so doing, the Tenth Circuit followed the lead of the Second Circuit in *Moetamedi*, where the issue raised by the Defendant *clearly was* addressed. *See* 46 F.3d at 229 ("Unlike the instant case, the affidavit in [*United States v. Tagbering,* 985 F.2d 946 (8th Cir. 1993)]

was attached to the warrant and countersigned by the judge who issued the warrant."). The *Moetamedi* court rejected not only the contention that the triggering condition must be included in an anticipatory search warrant, but also the corollary that the supporting affidavit must be attached to an anticipatory search warrant if the triggering condition is not expressly included therein:

> We [conclude] that an anticipatory warrant is valid even though it does not state on its face the conditions precedent for its execution, when (1) 'clear, explicit, and narrowly drawn' conditions for the execution of the warrant are contained in the affidavit that applies for the warrant application, and (2) those conditions are actually satisfied before the warrant is executed.

*Id*. As in *Moetamedi*, the supporting affidavit in this case contained a "clear, explicit and narrowly drawn" condition for execution of the warrant to search the Defendant's home, *i.e.*, the delivery of the drugs by Bollen. The search warrant was not executed until this occurred. The undersigned Magistrate Judge therefore concludes, as did the *Moetamedi* court, that the search warrant in this case was not invalid for lack of a description of the triggering condition.

### 4. The *Leon* good-faith exception applies to the search of the Defendant's home.

Assuming *arguendo* that the anticipatory warrant to search the Defendant's home *was* invalid for some reason, the question arises as to the applicability of the good-faith exception to the exclusionary rule provided by *United States v. Leon*, 468 U.S. 897 (1984). The Defendant contends that the good-faith exception would not apply to this case and that the evidence seized from his home should therefore be suppressed. The government, on the

other hand, contends that the good-faith exception would apply and that the evidence should not be suppressed even if the anticipatory search warrant were found to be invalid.

There are generally four situations in which the *Leon* good-faith exception *would not* apply: (i) when the issuing judge was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (ii) when the issuing judge wholly abandons the judicial role; (iii) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and, (iv) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid. *See Leon,* 468 U.S. at 922-23. The Defendant does not identify which of these situations would apply to this case, and the undersigned Magistrate Judge cannot find one. There is no indication that any of the information contained in the supporting affidavit was false or misleading, that the issuing court abandoned its judicial role in any way, that the supporting affidavit was woefully lacking in probable cause (particularly in light of the findings to the contrary by the issuing court and the undersigned Magistrate Judge herein), or that the warrant was facially deficient (once again, particularly in light of the findings to the contrary by the undersigned Magistrate Judge herein). On the contrary, the available evidence refutes the existence of any of these situations. The undersigned Magistrate Judge therefore finds that the *Leon* good-faith exception would apply to the search of the Defendant's home in this case, and the evidence seized in the search should not be suppressed even if the anticipatory search warrant were found to be invalid.

In summary, the undersigned Magistrate Judge finds that the supporting affidavit prepared to secure the anticipatory search warrant herein was proper in form, contained reliable information and established probable cause to believe that drugs would be delivered to the Defendant's home and would be found therein after delivery. The undersigned Magistrate Judge further finds that the search warrant was itself valid even without mention of the condition triggering execution or the attachment of the supporting affidavit. Finally, the undersigned Magistrate Judge finds that the *Leon* good-faith exception would apply here in any event. Consequently, the evidence seized from the Defendant's home should not be suppressed, and the Defendant Rodolfo Sanabria Sanchez's Motion to Suppress with Memorandum in Support [Docket No. 22] and Amended Motion to Suppress with Memorandum in Support [Docket No. 26] should be denied.

## C. Conclusion

The undersigned Magistrate Judge PROPOSES the findings set forth above and accordingly RECOMMENDS that the Defendant Rodolfo Sanabria Sanchez's Motion to Suppress with Memorandum in Support [Docket No. 22] and Amended Motion to Suppress with Memorandum in Support [Docket No. 26] be in all things DENIED. If there are any objections to this Report and Recommendation, they must be filed within ten days of service hereof. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

**IT IS SO ORDERED** this 8th day of May, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**